IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>JIMMY HOLMES NACE, et al,<br><br>    *Defendant.* | Case No. CR-21-198-RAW |

## UNITED STATES TRIAL BRIEF

Comes now the United States, by and through Christopher J. Wilson, United States Attorney for the Eastern District of Oklahoma, and T. Cameron McEwen, Assistant United States Attorney, and respectfully submits its trial brief for the above-styled case. The United States would show the following:

**I. STATUS OF THE CASE**

 A. A jury trial is currently set for Tuesday, March 1, 2022 at 9:00 a.m.

 B. The estimated time for trial, including jury selection, is 4 days.

 C. The Defendant is in custody.

 D. Trial by jury has not been waived.

 E. An interpreter will not be required.

 F. The United States expects to call approximately 12 witnesses, but if chain of custody of evidence and stipulations cannot be agreed upon by the parties or there is a need for rebuttal witnesses, the number of witnesses could increase to approximately 20.

 G. The United States may offer up to 100 exhibits, consisting primarily of a cement bench, photographs, 911 call, Defendant's Miranda waiver, Defendant's audio statements, Defendant's written statement, biological evidence, EZ Mart audio and video clips, Google maps, Bobby Joe Dalpoas' Indian status verification, and expert reports.

 H. The parties have not reached any stipulations at this time. The United States is willing

to enter into stipulations of fact or law as well as to the admissibility of exhibits where the parties can agree.

I. Defendant has not provided notice of any affirmative defense, alibi defense, expert witnesses, other fact witnesses, nor expert evidence regarding his mental condition pursuant to Federal Rule of Criminal Procedure 12.2. Defendant has not provided any discovery.

**II.   FACTUAL OVERVIEW**

For the convenience of the Court, here are the familial relationships in this case:

- <u>Defendant</u>: S.D.'s brother, T.M.'s uncle, and Dalpoas' brother-in-law
- <u>Bobby Joe Dalpoas</u>: S.D.'s husband, T.M.'s step-father, and Defendant's brother-in-law
- <u>S.D.</u>: Dalpoas' wife, T.M.'s mother, and Defendant's sister
- <u>T.M.</u>: H.M.'s husband, M.V.'s son-in-law, S.D.'s son, Dalpoas' stepson, and Defendant's nephew
- <u>M.V.</u>: H.M.'s father and T.M.'s father-in-law
- <u>H.M.</u>: T.M.'s wife, M.V.'s daughter, and S.D.'s daughter-in-law

On the evening of July 3, 2019, Defendant and S.D. left Bobby Joe Dalpoas' residence to get away from Dalpoas because of his drinking. They met up with M.V., T.M., and H.M. at M.V.'s residence. Later that night, Defendant, M.V., and T.M. returned to Dalpoas' residence to get Defendant's wallet and tobacco. While at the residence, the four men drank alcohol together. At some point, Defendant and Dalpoas got into an argument and fight because of how Dalpoas was treating S.D. During the fight, Defendant punched Dalpoas in the head and knocked him to the ground. T.M. and M.V. saw blood coming from one of Dalpoas' ears and thought he was dead. Neither man checked Dalpoas' pulse nor did anything else to verify whether Dalpoas was alive or not. According to Defendant's August 6, 2019 statement to law enforcement, Dalpoas showed signs of life after being knocked to the ground. After the fight, at the direction of Defendant, M.V. and T.M. helped Defendant load Dalpoas' body into M.V.'s truck, and they transported Dalpoas to the Red Oak Cemetery in Bache, Oklahoma.

At the Red Oak Cemetery, Defendant and M.V. unloaded Dalpoas's body from the truck.

Defendant asked T.M. to help him get a cement bench. After getting the bench, Defendant and T.M. dropped the bench on Dalpoas' head two times. On the second drop, the bench fell on T.M.'s toe injuring it. Defendant then picked up the bench by himself and dropped it on Dalpoas' head a third time. After witnessing Defendant drop the cement bench on Dalpoas' head, M.V. asked Defendant what he was doing. Defendant responded, "making sure he was dead." Defendant then lit Dalpoas on fire. After witnessing Defendant light Dalpoas on fire, M.V. asked Defendant what he was doing. Defendant responded, "getting rid of the evidence." At this point, all three men got into M.V.'s truck and left the cemetery leaving Dalpoas behind. Over the next several days, Defendant, M.V., and T.M. got together and came up with a story to tell law enforcement that they had not seen Dalpoas the night of July 3rd.

Over the course of the investigation, Defendant, M.V., and T.M. were all interviewed by law enforcement. Nobody admitted to their involvement in the death of Dalpoas until August 6, 2019, when T.M. confessed to United States Army investigators. Defendant was interviewed twice on July 5, 2019, once on July 10, 2019, and once on August 6, 2019. It was during Defendant's August 6, 2019 interview and written statement that Defendant confessed to being an aider and abettor in the death of Dalpoas. In his written statement, Defendant confessed to loading and unloading Dalpoas' body from M.V.'s truck. He also confessed to getting the cement bench with T.M. and spraying lighter fluid on Dalpoas' body.

According to Dr. Ross Miller's autopsy report, the cause of death in this case is blunt force trauma to the head and thermal burn injuries. The manner of death is homicide. All of Dalpoas' blunt force injuries to the head were consistent with a cement bench being dropped on it. Also, none of the blunt force injuries to the head appeared to be postmortem.

As for jurisdiction, Defendant is a non-Indian. At the time of his death, Dalpoas possessed

a Certificate of Degree of Indian Blood with some degree of Chickasaw Indian blood and qualified for recognition as a citizen of the Chickasaw Nation, which is a federally recognized Indian Tribe. All the events related to Dalpoas' death occurred within the Choctaw Indian Tribe Reservation in the Eastern District of Oklahoma.

## INDICTMENT

## COUNT ONE

### MURDER IN INDIAN COUNTRY
### [18 U.S.C. §§ 1111(a), 1151, 1152 & 2]

| | | |
|---|---|---|
| First: | The defendant caused the death of the victim named in the indictment; |
| Second: | The defendant killed the victim with malice aforethought; |
| Third: | The killing was premeditated; |
| Fourth: | The defendant is a non-Indian; |
| Fifth: | The victim is an Indian; and |
| Sixth: | The killing took place within the Indian Country jurisdiction of the United States. |

**III.     PROPOSED WITNESSES AND TIME OF DIRECT EXAMINATION**

The United States expects to call the following witnesses in its case-in-chief. The anticipated time for the direct examination and a summary of the expected testimony is provided for each witness. (**Note:** This is not an exhausted list of potential witnesses in the case, but merely the witnesses the United States believes may be necessary. The United States may call fewer witnesses depending on the nature and extent of Defendant's theory of the case and/or cross-examination as well as possible stipulations by Defendant. The United States may call more witnesses for chain of custody purposes if necessary.)

**A. T.B. – 30 minutes**

He will testify to finding Bobby Joe Dalpoas' body at the Red Oak Cemetery on July 4, 2019, the circumstances around finding the body, and notifying 911. He will testify to his 911 call with A.W.

**B. A.W., S.T, or K.T. – 15 minutes**

He/she will testify to his/her duties, responsibilities, and actions as a 911 dispatcher/operator on July 4, 2019. He/she will testify to the 911 call with T.B.

**C. Jeremy James – 30 minutes**

He will testify to his duties, responsibilities, and actions at the Red Oak Cemetery on July 4, 2019 for the Pittsburg County Sheriff's Office.

**D. John Graham – 1 hour**

He will testify about the collection of evidence, crime scene photos, and the chain of custody of evidence at the crime scene and throughout the investigation by OSBI.

**E. S.D. – 30 minutes**

She will testify to her relationship with Bobby Joe Dalpoas, Defendant, and other witnesses in the case. She will testify to her actions before and after Bobby Joe Dalpoas' death.

**F. H.M. – 30 minutes**

She will testify to her relationship with Bobby Joe Dalpoas, Defendant, and other witnesses in the case. She will testify to her actions before and after Bobby Joe Dalpoas' death.

**G. M.V. – 2 hours**

He will testify to his relationship with Bobby Joe Dalpoas, Defendant, and other witnesses in the case. He will testify to his actions before and after the death of Bobby Joe Dalpoas as well as his involvement in his death.

### H. T.M. – 2 hours

He will testify to his relationship with Bobby Joe Dalpoas, Defendant, and other witnesses in the case. He will testify to his actions before and after the death of Bobby Joe Dalpoas as well as his involvement in his death.

### I. Dr. Ross Miller – 2 hours

He will testify to the autopsy of Bobby Joe Dalpoas conducted by the Office of the Chief Medical Examiner in Tulsa, Oklahoma. He will testify of his findings and conclusions, including the manner and cause of death of the victim. He will also testify to the injuries to Bobby Joe Dalpoas, the Medical Examiner and crime scene photos, and the collection of evidence and chain of custody of evidence by the Medical Examiner's Office.

### J. Randy Hass – 2 hours

As the original case agent in the case, he will testify to the Pittsburg County Sheriff Office's investigation into the death of Bobby Joe Dalpoas. He will testify to his interviews with Defendant. He will also testify to the collection of evidence and the chain of custody of evidence by the Pittsburg County Sheriff's Office throughout the investigation.

### K. Lindsey Smith – 1 hour

She will testify to her duties and responsibilities as a forensic DNA examiner for the U.S. Army Criminal Investigations Laboratory in Forest Park, Georgia. She will testify to the collection of evidence and chain of custody of evidence by the U.S. Army Criminal Investigations Laboratory. She will also testify to her findings and conclusions of the examinations and comparisons, including, among other things, any results and notable information of the examinations and comparisons of the DNA and buccal swabs in this case.

### L. Derek Dorrien or Richard Lute – 1 hour

They will testify to their duties and responsibilities as a forensic chemist for the U.S. Army Criminal Investigations Laboratory in Forest Park, Georgia. They will testify to the collection of evidence and chain of custody of evidence by the U.S. Army Criminal Investigations Laboratory. They will also testify to the findings and conclusions of the analyses, examinations, and comparisons, including, among other things, any results and notable information of the examinations and comparisons of the burned items, fire debris, ignitable liquids, and headspace vapors collected in this case.

### M. Chickasaw Nation Representative – 15 minutes

A representative of the Chickasaw Nation of will testify to Defendant's Indian status.

### N. Julie Padgett – 30 minutes

She will testify to her duties, responsibilities, and actions as the Evidence Technician for the Pittsburg County Sheriff's Office in this case. She will testify to the collection of evidence and chain of custody of evidence by the Medical Examiner's Office.

### O. Russell Boatman – 30 minutes

He will testify to his duties, responsibilities, and actions as a Medical Examiner Investigator for the Office of the Chief Medical Examiner in Tulsa, Oklahoma in this case. He will testify to the Medical Examiner photos taken at the crime scene and the collection of evidence and chain of custody of evidence by the Medical Examiner's Office.

### P. Anelisse Duque – 30 minutes

She will testify to her duties, responsibilities, and actions as a Medical Examiner Investigator for the Office of the Chief Medical Examiner in Tulsa, Oklahoma in this case. She will testify to the collection of evidence and chain of custody of evidence by the Medical

Examiner's Office.

### Q. United States Army Representatives – 30 minutes

Representatives of the United States Army will testify to the collection of evidence and chain of custody of evidence by the United States Army.

### R. Matt Wagner – 30 minutes

He will testify to his duties, responsibilities, and actions as the case agent for the FBI in this case. He will testify to the collection of evidence and chain of custody of evidence by the FBI.

## IV. LEGAL AND EVIDENTIARY ISSUES

### A. Statutes Charged

The statutes alleged in the Indictment do not present any novel legal issues.

### B. Defenses & Discovery

Defendant has not notified the United States of an affirmative defense, but he did include a jury instruction for self-defense in his proposed jury instructions. At this time, Defendant has not produced any expert reports, formally notified the United States of his intent to call an expert witness or provided discovery to the United States.

### C. Government's Plea Offer

If Defendant rejects the United States current plea offer, the Government respectfully requests the Court confirm with Defendant that he is aware of the previously communicated plea offer and that he has chosen to decline said plea offer. *See Lafler v. Cooper*, 566 U.S. 156 (2012).

### D. Evidentiary Issues

Defendant filed a Motion to Suppress Statements Made to Law Enforcement (Doc. #97) in this case. In its Responses, the United States asked the Court to deny Defendant's Motion. *See* Docs. #103 and 108. The suppression/*Jackson v. Denno* hearing is scheduled for February 10,

2022, at 2:30 pm before United States Magistrate Judge Steven P. Shreder.

The United States notified the Court and Defendant that it does not intend to admit any 404 or 609 evidence against Defendant in its case-in-chief, however the United States may admit 404 or 609 evidence to rebut any character evidence offered by Defendant, to impeach Defendant in the event he testifies, or to otherwise rebut defensive theories advanced at trial. *See* Doc. #96. Defendant filed a Motion in Limine (Doc. #98) to prevent the Government from admitting any evidence related to Defendant's prior criminal history and substance abuse history. The Government responded to Defendant's Motion in Limine and asked the Court to deny the Motion for it not being ripe. *See* Doc. #104. Defendant's Motion in Limine is still pending.

Defendant is required to notify the Court and the United States of its intent to admit 404 and 609 evidence against Government witnesses. Defendant filed a Notice to Impeach (Doc. #115) on February 7, 2022. If M.V. takes the stand, Defendant intends to impeach M.V.'s testimony with his prior convictions. Most, if not all, these convictions are inadmissible pursuant to FRE 609. This is the only notice of 404 and 609 evidence Defendant has filed with the Court in this case. Therefore, the Government respectfully requests the Court prohibit Defendant from admitting inadmissible 404 or 609 evidence against M.V. and all other Government witnesses.

At trial, the United States intends to offer photographic evidence of Bobby Joe Dalpoas' deceased body at the crime scene and at the autopsy.

### E.  Pre-admission of Exhibits and Stipulations

The United States has yet to finalize the agreed upon pre-admitted exhibits and stipulations with Defendant, but it has been in communication with defense counsel on these matters. It intends on meeting with or speaking to defense counsel again prior to the pre-trial conference to finalize these matters and will notify the Court of the agreed upon pre-admitted exhibits and stipulations

9

at the pre-trial conference.

### F. Witness Sequestration

The United States requests the Court instruct the witnesses for both the Government and Defendant to comply with Rule 615 of the Federal Rules of Evidence. The United States will request that FBI Special Agent Matt Wagner be allowed to sit at counsel table as the case agent in this case.

### V. CONCLUSION

This trial brief is offered to acquaint the Court with factual and legal issues which may arise at trial. The United States respectfully requests the Court grant it leave to submit additional memoranda or briefing should subsequent issues be identified.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

/s/ T. Cameron McEwen
T. CAMERON MCEWEN
AL BAR # 7161-R67M
Assistant United States Attorney
Eastern District of Oklahoma
520 Denison Ave.
Muskogee, OK 74401
Phone: (918) 684-5100
Fax: (918) 684-5150
Email: Cameron.McEwen@usdoj.gov

## CERTIFICATE OF SERVICE

      I certify that on February 7, 2022, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    J. Wesley Bryant, Attorney for Jimmy Holmes Nace

                                    /s/ T. Cameron McEwen
                                    T. CAMERON MCEWEN
                                    Office of the United States Attorney