IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
MUSKOGEE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 6:21-CR-198-RAW |
| v. | |
| JIMMY NACE | |

JIMMY NACE'S RESPONSE TO THE GOVERNMENT'S
MOTION IN LIMINE AND REQUEST TO *VOIR DIRE* WITNESSES

COMES NOW Defendant, JIMMY NACE, by and through undersigned counsel, and responds to the government's motion in limine and request to voir dire witnesses. (Doc. 170). In their motion, the government first asks to exclude any testimony that the victim, Bobby Dalpoas, had sex with his wife's daughter. Second, the government asks the court to allow them to *voir dire* Sheryl Dalpoas, Matt Vermillion, and Tyler Morgan outside the presence of the jury to establish their knowledge of Mr. Dalpoas' violent acts. Because the government's request violates Mr. Nace's Sixth Amendment right of confrontation and because the Court has already ruled on this issue, (Doc. 162 at 2-3), Mr. Nace objects to their motion.

The right of confrontation is guaranteed by the Sixth Amendment to the United States Constitution. It provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the

reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. The word 'confront,' after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness." *Maryland v. Craig*, 497 U.S. 836, 845, (1990). As this description indicates, the right guaranteed by the Confrontation Clause includes not only a "personal examination," *Mattox v. United States*, 156 U.S. 237, 242, (1895), but also "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *California v. Green,* 399 U.S. 149, 158 (1970) (footnote omitted).

Historically, the primary concern the Sixth Amendment addressed was to avoid a conviction based upon depositions or *ex parte* affidavits instead of personal examination and cross-examination of witnesses before the trier of fact.

> The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge

2

by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox, supra,* 156 U.S., at 242–243.

The combined effect of the elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings. *Craig*, 497 U.S., at 846.

As the Supreme Court said in *Coy v. Iowa* "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." 487 U.S., at 1016, 108 S.Ct., at 2801 (citing *Kentucky v. Stincer,* 482 U.S. 730, 748, 749–750, 107 S.Ct. 2658, 2669, 2669, 2670, 96 L.Ed.2d 631 (1987) (MARSHALL, J., dissenting)); see also *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) (plurality opinion); *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970); *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); *Dowdell v. United States,* 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911); *Kirby v. United States,* 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899); *Mattox v. United States,* 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895).

In their motion in limine, the government first argued that the testimony of a sexual relationship between the victim, Bobby Dalpoas, and his wife's daughter

should not be admitted under Fed. R. Evid. 403 and 802. Although the government may not agree with the Court's ruling, the Court has already ruled on this issue. (Doc. 162 at 2-3). Furthermore, the government knows Mr. Nace's request for the admission of 404(b) evidence included the sexual act between Mr. Dalpoas and Sheryl Dalpoas's daughter. (Doc. 134 at 3). Nonetheless, the government seeks to exclude this evidence.

In their motion, the government stated, "[t]here is absolutely no link in this case to [Bobby Dalpoas]'s alleged prior sexual relationship with R.C. and the victim's death." (Doc. 170 at 3). To understand how absurd this statement is, the government should have disclosed more about the facts. First, R.C. is Tyler Morgan's half-sister. During Mr. Morgan's military prosecution, R.C. said that their mom really was not around when Mr. Morgan was growing up. She said that she was Mr. Morgan's primary caregiver as his mom, Sheryl Morgan, was away for weeks at a time. R.C. claimed that she took Mr. Morgan to school, sports events, fed him, and provided clothing. For all practical purposes, R.C. acted as Mr. Morgan's mother.

The government also claims that the statements of Sheryl Dalpoas and R.C. about Bobby sexually assaulting R.C. conflict with one another. (Doc. 170 at 3). This is not exactly accurate. In discovery, the government provided notes of an interview with R.C. In those notes, R.C. told the investigator that Bobby Dalpoas

4

made passes at R.C., and one night when R.C. was drinking, Bobby Dalpoas went into her pants. Further, R.C. said, "Bobby claims that sex did happen." In March 2018, just over a year before Bobby Dalpoas' death, Sheryl Dalpoas filed for a protective order. In the protective order, Sheryl Dalpoas said, that Mr. Dalpoas had "been gone from the house for three days because he wanted to have sex with my daughter." More recently, the FBI interviewed Sheryl Dalpoas. During the interview, Sheryl Dalpoas disclosed that Bobby Dalpoas and R.C. had a sexual relationship before they were married and Bobby Dalpoas and R.C. were together after Sheryl and Bobby were married. In her statement, Sheryl Dalpoas said, "that Robin said she was raped, but Sheryl did not know." Sheryl Dalpoas' statement and R.C.'s statements are neither contradictory or inconsistent.

The issue in this case is whether someone other than Mr. Nace had motive to confront Bobby Dalpoas. We know from previous incidents, police reports, and court filings, that Sheryl Dalpoas had reason to injure Bobby Dalpoas. She shot him in November 2018. Furthermore, we know that there was at least an allegation that Bobby Dalpoas raped – or at least had sex with – the person who helped raise Tyler Morgan. That evidence, it seems, is enough to prove that Tyler Morgan had motive to confront Bobby Dalpoas. And, if the government offers evidence that Mr. Nace and Sheryl Dalpoas fled the house on July 3, 2019, to avoid contact with Bobby Dalpoas, Counsel should be able to cross-examine on the relationship – and the

continued violence – between Mr. Dalpoas and Sheryl Dalpoas, whether that violence was because Mr. Dalpoas raped R.C. or because they were both alcoholics and had a caustic relationship with each other.

The Court can easily dispense with the government's objection under Fed. R. Evid. 802. Testimony about the sexual relationship between Bobby Dalpoas and R.C. is not hearsay. It is not offered for the truth of the matter asserted. According to Fed. R. Evid., hearsay is defined as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence *to prove the truth of the matter asserted* in the statement. Fed. R. Evid. 801. This testimony is not hearsay. It is not offered to prove that Bobby Dalpoas had sex with or even raped R.C. It is offered to prove that someone other than Jimmy Nace had a reason to confront Bobby Dalpoas on July 3, 2019.

Next, the Court can also easily dispense with the government's argument that the evidence should be excluded under Fed. R. Evid. 403. Counsel would concede that the evidence is prejudicial to the government. However, Counsel asserts that motive for someone other than Jimmy Nace to confront Bobby Dalpoas is highly probative, especially when the government's primary witness against Mr. Nace is the one with the motive to confront. That balancing test clearly favors admission of the evidence.

Second, the government asks the Court to allow the witnesses to be *voir dired* outside the presence of the jury to establish their knowledge of the victim's violent acts. This would be a clear violation of the Sixth Amendment's right of confrontation. As the Supreme Court said in *Coy v. Iowa* "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Even the government's requested jury charge recognizes that the jury is the judge of credibility or believability of witnesses. (Doc. 116 at 8). The charge provides,

> You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the United States or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

(Doc. 116 at 8). The jury must hear the answers to the witness' question, see their reaction and consider all of the evidence to weigh the witness' credibility.

This is a case that is centered on the credibility of three witnesses, Tyler Morgan, Matthew Vermillion, and Jimmy Nace. They were the only three present on the evening of July 3, 2019. To properly assess each witness' credibility (whether this crime was motivated by an attack – either physical or sexual – on a loved one) is a decision the jury must make after seeing and hearing the witness' response to proper cross-examination, giving full effect to the Sixth Amendment.

Therefore, Mr. Nace asks the Court to deny the government's motion in limine (Doc. 170) and allow the jury to determine the credibility and believability of the witnesses.

Respectfully submitted, this 5th day of March, 2022.

*J. Wesley Bryant*
J. WESLEY BRYANT
Georgia Bar No. 091621
Attorney for Mr. Nace

Federal Defender Program, Inc.
101 Marietta Street, N.W., Suite 1500
Atlanta, Georgia 30303
(404) 688-7530; Fax 404-688-0768
Wes_Bryant@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Response to Government's Motion in Limine has been formatted in Times New Roman 14 point, in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

> T. Cameron McEwen
> Assistant United States Attorney
> Eastern District of Oklahoma
> 520 Denison Ave
> Muskogee, OK 74401

Dated: This 5th day of March, 2022.

*J. Wesley Bryant*
J. WESLEY BRYANT
Georgia Bar No. 091621
Attorney for Mr. Nace