IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JIMMY HOLMES NACE, et al,<br><br>*Defendant.* | Case No. CR-21-198-RAW |

### UNITED STATES' MOTION FOR LEAVE TO RESPOND TO DEFENDANT'S MOTION IN LIMINE RE: TESTIMONY THAT VIOLATES DEFENDANT'S DUE PROCESS RIGHTS

**Comes Now**, the United States of America, by and through Christopher J. Wilson, United States Attorney, and T. Cameron McEwen, Assistant United States Attorney, and respectfully requests leave of the Court to respond to Defendant's Motion in Limine Re: Testimony that Violates Defendant's Due Process Rights (Doc. #189). The government acknowledges that in light of Defendant's plea on March 14, 2022, Defendant's Motion is likely moot. However, the government would like an opportunity to respond to the motion in order to clarify the record regarding certain statements contained therein. In support of its request, the government states:

Contrary to Defendant's assertion, the government's theory of the case has consistently been that the victim, Bobby Joe Dalpoas, Jr., was alive after the fight at victim's residence, alive at the cemetery, and that his death was a result of the cement bench being dropped on his head multiple times. At trial, the government would have elicited the following testimony and evidence to support this theory:

1. Defendant's statement to law enforcement on August 6, 2019, where he said, "Bobby fucking, finally came to, we get him in the truck and he was bubbling, the blood was bubbling. I was like dude, turn him on his freaking side man, cause he had him on his back." Doc. 151.1 at pg. 12.

2. Defendant's statement to law enforcement to on August 6, 2019, where he said, "I mean he was breathing blood. You could hear it in his mouth and stuff." Doc. 151.1 at pg. 13.

3. Anticipated testimony from Matthew Vermillion that after witnessing Defendant drop a cement bench on Mr. Dalpoas' head, he asked Defendant what he was doing. Defendant's response was "making sure he was dead." After witnessing Defendant set Mr. Dalpoas on fire, he asked Defendant again what he was doing. Defendant's response was "getting rid of the evidence."

4. Anticipated testimony of evidence of blood at the cemetery crime scene.

5. Anticipated testimony from Mr. Vermillion that he washed his truck three times to remove the blood from the bed of his truck.

6. Anticipated testimony from the medical examiner that the cause of Mr. Dalpoas' death was blunt force trauma to the head and thermal burn injuries.

7. Anticipated testimony from the medical examiner that the manner of Mr. Dalpoas' death was homicide.

8. Anticipated testimony from the medical examiner that Mr. Dalpoas' blunt force injuries were consistent with injuries caused by a cement bench being dropped on his head.

9. Anticipated testimony from the medical examiner that none of the blunt force injuries appeared to be postmortem.

Not only is this theory consistent with the theory the government pursued in the prosecution of Defendant and Mr. Vermillion, but it is the same theory the United States Army pursued at the court martial of Tyler Morgan. The United States Army and Mr. Morgan agreed to the following facts and basis for his plea:

1. "Based on his subsequent actions, it was apparent that Mr. Nace thought Bobby Dalpoas may still be alive and wanted to make sure Bobby Dalpoas was dead." [Morgan's Stipulation of Fact, Bates Stamp 00003184].

2. "Based on Jimmy Nace's apparent belief that Bobby Dalpoas was still alive and the fact that no-one had checked to confirm, PFC Morgan believed that Bobby Dalpoas may still have been alive. In order to make sure Bobby Dalpoas was dead, he helped Jimmy Nace drop the bench on Bobby Dalpoas's face. As a continuance of their intent to make sure Mr. Dalpoas was dead, they then picked the bench back up and dropped it a second time." *Id*.

3. As to the charge of Attempted Murder, which Mr. Morgan pled guilty to at his court martial, Mr. Morgan admitted that "on July 4, 2019, he dropped a concrete slab on the head of Bobby Dalpoas. PFC Morgan admits that, at the time that he dropped the concrete slab, he believed that Bobby Dalpoas may still be alive. PFC Morgan dropped the slab with the intent to make sure Bobby Dalpoas was dead, without justification or excuse. The dropping of the concrete slab amounted to more than mere preparation but was a direct step toward the unlawful killing of Bobby Dalpoas. Such an act had the tendency to bring about the death of Bobby Dalpoas. PFC Morgan then assisted Jimmy Nace in dropping the concrete slab on Bobby Dalpoas a second time, again with the original intent of killing Bobby Dalpoas by making sure he was dead. This act also had a tendency to bring about the death of Bobby Dalpoas. Although the exact time of death is unknown, Bobby Dalpoas died sometime that evening and was dead by the time that PFC Morgan left the cemetery." [Morgan's Stipulation of Fact, Bates Stamp 00003186].

As for Mr. Morgan's plea to accessory after the fact, he specifically pled guilty to Accessory After the Fact of Aggravated Assault, not murder as indicated by Defendant in his Motion in Limine. [Morgan's Plea Agreement, Bates Stamp 00001950 and Morgan's Stipulation of Fact, Bates Stamp 00003185]; *see* Doc. #189 at pg. 9. As the factual basis for the plea to that charge, Mr. Morgan admitted that he assisted Defendant "in transporting Bobby Dalpoas' body from the scene of [an] aggravated assault." [Morgan's Plea Agreement, Bates Stamp 00001950 and Morgan's Stipulation of Fact, Bates Stamp 00003185]. Mr. Morgan's plea to this charge further supports the United States Army's theory that the victim was alive after leaving his house and was killed at the cemetery, as a result of the cement bench being dropped on his head.

Also, contrary to Defendant's assertion, the government never agreed to not prosecute Mr. Morgan in exchange for his testimony. Because the United States Army prosecuted Mr. Morgan, jeopardy attached preventing the United States Government from further prosecution of Mr. Morgan.

Additionally, in Defendant's response (Doc. #172) to the government's Motion in Limine (Doc. #170), he argued that the victim in this case had previously committed a rape. The Defendant asserted that evidence of the rape should be admissible at trial. On March 10, 2022, the FBI

interviewed the alleged rape victim, who told the agent she was never raped by the victim. The summary of the interview was provided to defense counsel on March 11, 2022.

Wherefore, the United States acknowledges that Defendant's Motion in Limine Re: Testimony that Violates Defendant's Due Process Rights (Doc. #189) is likely moot. However, the government respectfully requests leave of the Court to respond to Defendant's Motion to clarify the record.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

*/s/ T. Cameron McEwen*
T. CAMERON MCEWEN
AL BAR # 7161-R67M
Assistant United States Attorney
Eastern District of Oklahoma
520 Denison Ave.
Muskogee, OK 74401
(918) 684-5100
Cameron.McEwen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2022, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

J. Wesley Bryant, Attorney for Jimmy Holmes Nace

*/s/T. Cameron McEwen*
T. CAMERON MCEWEN
Office of the United States Attorney